IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOYCE EATON,<br>    Plaintiff, | CV. 06-1474-AS |
| v. | FINDINGS AND<br>RECOMMENDATION |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | |

ASHMANSKAS, Magistrate Judge:

INTRODUCTION

  Plaintiff Joyce Eaton brings this action for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security disability insurance benefits ("DIB") under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, this court recommends that the Commissioner's final decision be reversed and remanded for the calculation and award of benefits.

BACKGROUND

Eaton was 56 years old when her insured status expired in December 2004. She completed high school. She worked in the past as an administrative secretary, contract administrator, marketing and sales assistant, and customer service manager. Tr. 99.[1] She last worked in June 1999.

Eaton alleges disability due to fibromyalgia, bursitis, carpal tunnel syndrome, and tendonitis. Tr. 70. She alleges these conditions cause the following symptoms: pain in most areas of her body, irritable bowel syndrome, extreme fatigue, lack of energy, anxiety attacks, memory problems, mental confusion, and depression. Tr. 32, 70, 106, 130.

Eaton alleges that she cannot work because of her combined physical and mental impairments, and that she ultimately stopped working because she was laid off and did not seek other employment because she felt so bad physically. Tr. 70. She also testified that by December 2004, she no longer could bend to do filing, lift folders, sit in a chair for hours typing and using a mouse, or maintain her concentration and remember details. Tr. 300.

Eaton filed an application for DIB benefits on September 3, 2003, alleging disability beginning June 11, 1999. Her date last insured was December 31, 2004. Eaton's application was denied initially and upon reconsideration. On April 19, 2006, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated June 15, 2006, the ALJ found Eaton not disabled and therefore not entitled to benefits. The Appeals Council denied Eaton's request for review, making the ALJ's decision the final decision of the Commissioner.

---

[1] Citations are to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

Page 2 - FINDINGS AND RECOMMENDATION

STANDARDS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039 (citation omitted). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

MEDICAL RECORDS

The medical records accurately set forth Eaton's medical history as it relates to her claim. The court has carefully reviewed the records, and the parties are familiar with them. Accordingly, only a brief summary appears below.

In May 1999, Dr. Hortsch, her treating physician, opined that her multiple aches and pains throughout her body may be fibromyalgia. Tr. 178. The diagnosis of fibromyalgia was

confirmed by other doctors and medical practitioners. Tr. 219, 232, 276, 284. She was treated on an ongoing basis for pain in her legs, knees, hips, buttocks, right ankle, right shoulder, back, neck, arms, and feet.

In November 1999, Dr. Hortsch opined that Eaton's right knee pain was caused by patellofemoral syndrome or kneecap pain, and that she may have some mild and infrequent neuropathy in her left hip. Tr. 175. In response to complaints of hip pain lasting three years, a bone density test was done in June 2002 with normal results. Tr. 216. In October 2003, Eaton's chiropractor, Dr. Kingston, opined that Eaton was disabled due to pain from fibromyalgia. Tr. 233.

In April 2000, Eaton was treated for bilateral hand numbness and Dr. Hortsch opined that she may have carpal tunnel syndrome, though the symptoms were mild. Tr. 171. Eaton had a history of chronic pain in her left ankle as a result of a fracture in 1986. An x-ray in August 2002 showed minimal degenerative changes in her left ankle. Tr. 217. In August 2004, Dr. Lee diagnosed fibromyalgia, mild osteoarthritis in Eaton's knees, her left ankle and likely in her hands, and clinical symptoms suggestive of carpal tunnel syndrome with dysesthesias[2] in a median nerve distribution or mild intermittent impingement of her median nerve. Tr. 278.

In February and April 2006, Eaton had two rheumatology consultations, both of which confirmed the diagnosis of fibromyalgia and osteoarthritis.[3] Tr. 280-82, 286-88. An x-ray of Eaton's right knee in February 2006 showed significant osteoarthritic disease. Tr. 284.

---

[2] Dysesthesias is an impairment of sensation, especially that of touch, or a condition in which an unpleasant sensation is produced by ordinary stimuli.

[3] Dr. Melcher specifically diagnosed osteoarthritis in Eaton's right knee and left great toe. Tr. 281.

In December 1999, Dr. Hortsch also treated Eaton for peptic disease and noted that she reported a history of irritable bowel syndrome ("IBS") and chronic reflux esophagitis. Tr. 173. She was treated on an ongoing basis for gastric problems and, in July 2001, she had a gastroenterology consultation and was diagnosed with acid reflux disease, controlled on medication. Tr. 214.

Eaton has a history of hypertension (high blood pressure), depression, and negative physical and psychological repercussions from stress. She was treated with medication for these ongoing conditions. Eaton also alleged ongoing "fibro fog", a condition many people with fibromyalgia experience that is characterized by unclear thinking or cognitive dysfunction.[4]

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999):

Step One. The ALJ determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the ALJ proceeds to evaluate claimant's case under step two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two. The ALJ determines whether claimant has one or more severe impairments significantly limiting him from performing basic work activities. If not, the claimant is not

---

[4] Fibromyalgia patients also claim that "fibro fog" causes them to be forgetful, lose their train of thought, and forget words or mix them up. See Arthritis Foundation website at http://ww2.arthritis.org/conditions/diseasecenter/fibromyalgia/fibro_fog.asp.

Page 5 - FINDINGS AND RECOMMENDATION

disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

<u>Step Three</u>. The ALJ next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations found at 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or equal one listed in the regulations, the ALJ's evaluation of claimant's case proceeds under step four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

<u>Step Four</u>. The ALJ determines whether claimant has sufficient residual functional capacity ("RFC") despite the impairment or various impairments to perform work he or she has done in the past. If so, claimant is not disabled. If claimant demonstrates he or she cannot do work performed in the past, the ALJ's evaluation of claimant's case proceeds under step five. 20 C.F.R. §§ 404.1520(e), 416.920(e).

<u>Step Five</u>. The ALJ determines whether claimant is able to do any other work. If not, claimant is disabled. If the ALJ finds claimant is able to do other work, the ALJ must show a significant number of jobs exist in the national economy that claimant can do. The ALJ may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2. If the ALJ demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled. If the ALJ does not meet this burden, claimant is disabled. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant. <u>Tackett</u>, 180 F.3d at 1098. At step five, the burden shifts to the ALJ to show that the claimant can perform jobs that

exist in significant numbers in the national economy.  Id.

THE ALJ'S FINDINGS

At step one, the ALJ found that Eaton had not engaged in substantial gainful activity at any time relevant to this decision.  Tr. 13.  This finding is not in dispute.  At step two, the ALJ found that Eaton had the following severe impairment:  fibromyalgia.  Tr. 13.  This finding is not in dispute.  At step three, the ALJ found that Eaton's impairments were not severe enough to meet or medically equal any of the listed impairments of 20 C.F.R. Subpart P, Appendix 1.  Tr. 14.  This finding is not in dispute.

Next, the ALJ found that Eaton could perform a wide range of sedentary work and assessed Eaton's residual functional capacity as of her date last insured as follows:  lift and/or carry up to ten pounds occasionally and less than ten pounds frequently; stand and/or walk for at least two hours, and sit for six hours during a full-time, eight hour workday and forty hour workweek; and perform only occasional overhead lifting.  Tr. 15.  This finding is in dispute.  At step four, the ALJ found that Eaton could perform her past relevant work as an administrative secretary and contract administrator.  Tr. 17.  This finding is in dispute.  The ALJ made no finding at step five.

DISCUSSION

Eaton contends the ALJ erred by:  (1) improperly assuming the role of medical expert; (2) improperly rejecting lay witness testimony; (3) reaching vocational conclusions without vocational evidence; (4) improperly rejecting Eaton's symptom testimony;[5] and (5) selectively

---

[5] Eaton makes an additional argument regarding the ALJ's alleged failure to address her ability to perform sustained employment.  As this argument is more appropriately considered as part of the credibility determination, it will not be addressed separately.

Page 7 - FINDINGS AND RECOMMENDATION

disregarding expert medical evidence.

Courts in this circuit have considered the difficult cases presented by claimants diagnosed with fibromyalgia. Fibromyalgia is a rheumatic disease that causes inflammation of the connective tissue of muscles, tendons, ligaments, and other tissue. Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004). Fibromyalgia's cause or causes are unknown, there is no cure, and its symptoms are entirely subjective. Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001). There are no laboratory tests for the presence or severity of fibromyalgia. Id. The principal symptoms are chronic pain, fatigue, disturbed sleep, stiffness, and the only symptom that discriminates between it and other diseases of a rheumatic character is multiple tender spots, more precisely eighteen fixed locations on the body that when pressed firmly cause the patient to flinch. Id.

ALJ's Interpretation of Medical Evidence

Eaton contends the ALJ improperly assumed the role of medical expert in finding her carpal tunnel syndrome and osteoarthritis non-severe impairments at step two and failing to take the effects and symptoms of these impairments into account when formulating her RFC. Eaton also argues that the ALJ improperly discredited her fibromyalgia symptoms in finding that those symptoms were more likely attributable to stress. With regard to carpal tunnel syndrome and osteoarthritis, Eaton relies on the diagnosis from Dr. Lee who found mild osteoarthritis, and symptoms "suggestive of carpal syndrome" and suspected "mild intermittent impingement of her median nerve." Tr. 278. Other medical professionals opined that Eaton had arthritis. See, e.g., Tr. 233, 269, 280, 287. Eaton's treating physician opined that she may have mild carpal tunnel syndrome. Tr. 171, 180. Thus the ALJ erred in failing to consider limitations from osteoarthritis and carpal tunnel syndrome in formulating Eaton's RFC.

Page 8 - FINDINGS AND RECOMMENDATION

With regard to Eaton's fibromyalgia symptoms and her ability to perform work activities, the ALJ wrote: "The claimant's symptoms are more likely attributable to situational stress than to her fibromylagia." Tr. 17. This conclusion is not supported by the record. The medical evidence clearly shows a positive diagnosis of fibromyalgia, confirmed by multiple physicians. No physician opined that Eaton's fibromyalgia symptoms were caused by stress. Simply because Eaton and other lay witnesses testified that stress exacerbates her existing symptoms does not provide evidence that stress <u>causes</u> her fibromyalgia symptoms. Because the ALJ's conclusion was not based on evidence in the record, his interpretation of Eaton's fibromyalgia symptoms as attributable to stress was in error.

<u>Vocational Conclusions</u>

Eaton argued that the ALJ assessed her as being limited with regard to overhead reaching but failed to include this limitation in his hypothetical to the VE at Eaton's hearing. The Commissioner responded by reviewing the tape recording of the hearing and finding a transcription error: where the administrative record says the ALJ asked the VE "would you add that the individual should engage in no more than occasional work", the corrected version of the record says, "would you add that the individual should engage in no more than occasional <u>overhead</u> work". Tr. 323 (emphasis added). The Commissioner supplemented the record with this correction on September 18, 2007, and sent notice of this correction to Eaton's attorney. Because the ALJ's hypothetical to the VE included the overhead reaching limitation, Eaton's argument to the contrary is moot.

///

<u>Lay Witness Testimony</u>

Eaton contends the ALJ wrongfully rejected the lay testimony of her husband and

Page 9 - FINDINGS AND RECOMMENDATION

mother. Lay testimony as to a claimant's symptoms is competent evidence which the ALJ must take into account. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) and (e), 416.913(d)(4) and (e). Where an ALJ disregards lay testimony, he must provide germane reasons for doing so. Dodrill, 12 F.3d at 919. Lay witnesses are competent to testify as to a claimant's symptoms or how an impairment affects the ability to work and therefore "cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (friends and relatives in a position to observe a claimant's symptoms and daily activities can provide competent evidence to support medical opinions, or show how an impairment affects claimant's ability to work).

Mr. Eaton testified that in 2004, his wife could not work in the yard for more than twenty minutes at a time, could not mow the lawn more than ten minutes at a time, and that she could not get on her knees in the house or in the yard. Tr. 318. She could not carry anything heavy more than a short distance, she could not stand more than thirty or forty minutes at a time, and could sit for only thirty minutes at a time. Tr. 319-20. She was in pain and would alleviate her pain by resting in her recliner. Tr. 321. She could not sit in a car for very long, and could not walk around the block more than twice without hurting and having to rest. Tr. 139.

Ms. Hopfer, Eaton's mother, wrote that Eaton had difficulty bending and using her hands to dress and bathe, holding her arms up to do her hair, and pain in her knees when bending, sitting or climbing. Tr. 122. Ms. Hopfer wrote that Eaton could not clean floors in her house, she did some laundry but could not carry laundry baskets, that she did not work in the yard, and that she had difficulty using her arms, hands and knees. Tr. 123-24. She wrote that Eaton's joints and muscles were painful and stiff, and that she could walk fifteen to twenty minutes or

less before needing to rest. Tr. 126.

With regard to this lay witness testimony, the ALJ wrote the following:

I considered written statements and testimony provided by Donald B. Eaton, the claimant's husband, and Laura Hopfer, the claimant's mother. However, because Mr. Eaton and Ms. Hopfer have a personal relationship with the claimant and neither possess the expertise nor the motivation to offer an objective or functional assessment their statements and testimony with respect to the claimant's true symptoms and limitations are considered with caution. In addition, their testimony and statements concerning the claimant's level of functioning are inconsistent with the totality of the medical evidence in the record.

Tr. 15. Eaton argues the ALJ improperly rejected lay witness testimony. This court agrees. The ALJ may not dismiss lay testimony because it is provided by family members. Nor may the ALJ dismiss lay testimony because of lack of expertise of the testifying parties. Friends and relatives in a position to observe a claimant's symptoms and daily activities can provide competent evidence to show how an impairment affects the claimant's ability to work. Sprague, 812 F.2d at 1232. Here, the ALJ dismissed Mr. Eaton and Ms. Hopfer because they were related to Eaton, and were not experts. This was error. The Commissioner cites Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006), as support for an ALJ's right to find that a close relationship between the claimant and the testifying party may suggest bias. However in Greger, the ALJ also relied on more specific evidence of record in rejecting the lay witness' testimony, including that her statements were inconsistent with the claimant's presentation to treating physicians. Without more evidence of bias or bad faith, an ALJ may not reject a lay witness simply because of a close relationship with the claimant.

The ALJ's second reason for rejecting the lay witness testimony provides insufficient detail as to what testimony is inconsistent with the medical evidence of record. The Commissioner argues that the relevant medical evidence to which the ALJ referred is discussed

Page 11 - FINDINGS AND RECOMMENDATION

"over the next several pages" in the ALJ's decision.  However, the ALJ's failure to point out specific medical evidence that undermines the lay testimony leaves this court to guess at the ALJ's reasoning and the Commissioner to offer post hoc rationalizations for the ALJ's conclusions.  See SEC v. Chenery Corp., 334 U.S. 194, 196-97 (1947) (a court may not accept counsel's post hoc rationalizations for agency actions).  The ALJ failed to offer the required germane reasons for rejecting the lay testimony of Hopfer and Mr. Eaton.  The testimony of these lay witnesses supports Eaton's claims regarding pain and limitations caused by fibromyalgia.

Eaton's Symptom Testimony

Eaton contends the ALJ wrongly rejected her testimony as to her symptoms in finding Eaton's alleged limitations not wholly credible.  Eaton argues that because the ALJ improperly rejected her testimony, Ninth Circuit precedent requires that this court credit her testimony as a matter of law.

If there is medical evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Id.  In weighing a claimant's credibility, the ALJ may consider her reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record, and testimony from physicians

Page 12 - FINDINGS AND RECOMMENDATION

and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

The ALJ wrote the following in questioning Eaton's credibility:

> The evidence in the record shows that the claimant's functional limitations are not as significant and limiting as has been alleged by the claimant. As discussed above, her daily activities are quite involved. She is able to perform a wide variety of housework. She has a driver's license and frequently leaves her house to complete errands. In addition, she gains relief from her pain and fatigue by taking breaks and naps, Ibuprofen, homeopathic aids, and frequent exercise at a fitness club called Curves. Similarly, her difficulties sleeping have responded well to homeopathic aids and a foam mattress.
>
> The claimant's treatment record suggests her fibromyalgia has only a minimal effect on her ability to perform work activities. In fact, her treating physician, Dr. Hortsch, described her fibromyalgia as "stable" and "doing quite well." In doing so, Dr. Hortsch denied her request for a handicap parking sticker, noting her ability to "walk quite a bit."

Tr. 16. The ALJ overstates Eaton's ability to engage in activities, and selectively quotes the record to support his finding that she is not as limited as she and the lay witnesses allege. With regard to her daily activities, this court notes that some limited level of activity is not fatal to Eaton's assertion of disability. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (claimant does not need to be "utterly incapacitated" to be considered disabled). Eaton testified that she can only carry one bag of groceries into the house from her car, that she could only wash dishes for fifteen minutes at a time, that she can vacuum for short periods of time, and that when she taxes herself physically she must rest in her recliner. Tr. 302, 312-15. Eaton's ability to perform limited housework, help prepare meals, and drive a car to do errands are not sufficiently strenuous to question her credibility regarding her capacity to work eight hours per day, forty hours per week. As Ninth Circuit cases have explained, the ability to cook meals, wash dishes, and engage in restricted travel are not necessarily inconsistent with disability in that "many

Page 13 - FINDINGS AND RECOMMENDATION

home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (collecting other cases). Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

With regard to exercise, the fact that Eaton was able to engage in some form of structured exercise and other daily activities is not fatal to her claim unless the level of activity was inconsistent with her claimed limitations. See Reddick, 157 F.3d at 722. Here, the ALJ mischaracterized Eaton's testimony with regard to "frequent" exercise: Eaton testified that she tried to exercise but exercising caused her joint pain to flare up. Tr. 286A. Also, the fact that Eaton gains some relief from rest and medication in treating her ongoing pain and difficulty sleeping does not damage her credibility. No treating or examining physician opined that Eaton was malingering, that her pain was out of proportion to objective medical findings, or that rest and medication were unnecessary and would not provide effective relief.

The court disagrees with the ALJ's characterization of the medical records as showing that fibromyalgia had only a minimal effect on Eaton's ability to perform work activities. The record is replete with descriptions of Eaton's chronic pain in her neck, shoulders, legs, arms and other body parts, and the limitations caused by fibromyalgia. With regard to Dr. Hortsch's statements quoted by the ALJ, the fact that Dr. Hortsch opined that Eaton's fibromyalgia was "stable" and wrote she was "doing quite well" on the day of that exam in June 2000 does not mean that Eaton's fibromyalgia was not on ongoing, serious impairment. A physician's statements must be read in the context of the overall diagnostic picture he draws. Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001). Dr. Hortsch treated Eaton on an ongoing basis

Page 14 - FINDINGS AND RECOMMENDATION

and never questioned her chronic pain or opined that her fibromyalgia was improving. Finally, the ALJ's reference to Eaton's request for a parking sticker is taken out of context: that request was made as a result of an ankle strain, not with regard to fibromyalgia. The ALJ's use of this information from the record to discredit Eaton's legitimate limitations caused by fibromyalgia was disingenuous.[6]

Because this court finds that not one of the grounds upon which the ALJ questioned Eaton's credibility is supported by the record, the ALJ's credibility finding is given no weight. Eaton's testimony as to her symptoms and limitations are credited as true as a matter of law. See Lester, 81 F.3d at 834 (ALJ's improper rejection of claimant's testimony must lead to crediting that testimony as a matter of law); see also Varney v. Secretary of HHS, 859 F.2d 1396, 1401 (9th Cir. 1988). The ALJ found that fibromyalgia was a severe impairment for the purpose of determining disability. Accepting Eaton's testimony as true with regard to the limitations caused by fibromyalgia, the record shows that she is unable to perform full-time work and should be found disabled.

Medical Expert Evidence

Eaton contends the ALJ selectively disregarded medical evidence. Specifically, the ALJ gave little weight to the opinions of Steve M. Kingston, D.C., Eaton's chiropractor, and two examining physicians, Dr. James Nakashima and Dr. Wai Lee.

Dr. Kingston's examination notes revealed extensive muscle spasm/tension in Eaton's neck, shoulders, mid-back and lower back. Tr. 232. He found that her feet were red, swollen,

---

[6] The ALJ's final reason for discrediting Eaton's symptom testimony was his unsubstantiated conclusion that Eaton's symptoms were more likely attributable to stress rather than fibromyalgia. As that argument was addressed above, it will not be revisited here.

Page 15 - FINDINGS AND RECOMMENDATION

and extremely tender and hot to the touch. Id. He noted that ambulation was difficult and guarded due to pain. Id. He also noted that cervicothoracic and lumbosacral ranges of motion were reduced by 30% due to pain and joint dysfunction. Id. He wrote that dynamometer grip strength was decreased in the right upper extremity which was significant since Eaton was right-handed. Id. He also noted that Eaton had multiple hot "trigger points" in her neck, trapezius, arms, mid-back, right hip, low back, legs and feet, consistent with a diagnosis of fibromyalgia. Tr. 233. In reviewing her medical records, Dr. Kingston noted degeneration of Eaton's left ankle. Id. Dr. Kingston concluded that Eaton was unable to perform routine housework without increasing her pain. Id.

With regard to Dr. Kingston, the ALJ discredited his opinion because Dr. Kingston was not Eaton's treating physician, Dr. Kingston provided only chiropractic care, and because the ALJ concluded that Dr. Kingston's findings were contradicted by Eaton's daily activities. Tr. 16. This court does not find any of these reasons persuasive. While a chiropractor's opinion does not merit as much weight as one from a physician, Dr. Kingston was Eaton's chiropractor from May 2002 through April 2004 and his opinion should not have been dismissed summarily. Also, Dr. Kingston's conclusion that routine housework caused an increase in Eaton's pain is consistent with Eaton's testimony and the testimony of lay witnesses. The ALJ erred in assigning little weight to Dr. Kingston's opinion.

Contrary to the ALJ's assertion, Dr. Lee evaluated Eaton on August 17, 2004, prior to her date last insured. He diagnosed fibromyalgia, mild osteoarthritis in both knees, the left ankle, and likely in her hands, clinical symptoms suggestive of carpal tunnel syndrome and possible mild impingement of her median nerve. Tr. 278. Dr. Nakashima evaluated Eaton on April 13, 2006, after her date last insured. He diagnosed fibromyalgia and osteoarthritis. Tr. 287. The

Page 16 - FINDINGS AND RECOMMENDATION

ALJ did not discuss these opinions, and assigned them little weight because they were conducted after December 31, 2004, and because neither doctor was a treating physician. Tr. 15. This was error. First, Dr. Lee's evaluation was conducted prior to Eaton's date last insured. Also, medical reports containing observations made after the period under consideration for disability are relevant in assessing a claimant's condition. Smith v. Bowen, 849 F.2d 1222, 1225-26 (9th Cir. 1988). Finally, opinions of examining physicians are entitled to some weight and the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and "specific and legitimate" reasons for rejecting a contradicted opinion of an examining physician. Lester, 81 F.3d at 830-31. The ALJ erred in dismissing these medical opinions without discussion and without providing the required reasons. These opinions support Eaton's testimony, the lay witness testimony, and other evidence in the record that fibromyalgia and other physical impairments made Eaton unable to perform full-time work before December 31, 2004, her date last insured.

///

///

///

///

///

## CONCLUSION

For the foregoing reasons, the Commissioner's decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due **November 2, 2007**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 18th day of October, 2007.

      /s/ Donald C. Ashmanskas
Honorable Donald Ashmanskas
United States Magistrate Judge